UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| ROSCOE WALLACE,<br><br>    Plaintiff,<br><br> vs.<br><br>FIMCO INC.,<br><br>    Defendant. | 4:23-CV-04045-VLD<br><br>ORDER GRANTING PARTIAL SUMMARY JUDGMENT AND DISMISSING REMAINING CLAIM |

**INTRODUCTION**

This matter is before the court on plaintiff Roscoe Wallace's complaint[1] alleging defendant former employer, FIMCO, Inc., engaged in unlawful racial discrimination in violation of 42 U.S.C. § 2000e-2(a)(1) and SDCL § 20-13-10. Docket No. 1. Pending is FIMCO's motion for summary judgment on all counts. Docket No. 23.

[This space intentionally left blank]

---

[1] Mr. Wallace initially represented himself in this matter. Attorney Jessica Board filed a notice of appearance on Mr. Wallace's behalf four months after the complaint was filed. Docket Nos. 1 & 13.

# FACTS[2]

### A.   Mr. Wallace's Employment at FIMCO

FIMCO is a family-owned manufacturer of lawn, garden, and agricultural equipment that has operated in North Sioux City, South Dakota, for approximately sixty years.  Docket No. 24, ¶ 1.  Roscoe Wallace began working at FIMCO in 2013 as a temporary seasonal employee.  Id. ¶ 9.  Mr. Wallace is a member of a protected class on the basis of his race (black).  Id. ¶ 8. Mr. Wallace was hired into a full-time, non-seasonal role on or about July 2, 2014.  Id. ¶ 10.  Upon hire, Mr. Wallace received and signed FIMCO's Employee Handbook in 2014.[3]  Id. ¶ 4; Docket No. 29, ¶ 4; Docket No. 23-1 at p. 213.

Around the time Mr. Wallace was hired, he met Kenton (Kenny) Gardner at FIMCO.  Docket No. 24, ¶ 11.  Mr. Wallace and Gardner had previously worked together at a different company, and Gardner had been impressed with Mr. Wallace's energy and drive.  Id. ¶ 12.  Not long after FIMCO hired Mr. Wallace in 2014, Mr. Wallace was promoted to drive a forklift in FIMCO's

---

[2] For readability, most quotation marks are omitted when quoting material sourced from the parties' statement of undisputed material facts or response to statement of undisputed material facts.

[3] FIMCO submitted as documentary evidence of Mr. Wallace's signature a "team member acknowledgment form" where Mr. Wallace, on July 2, 2014, signed that he had read, understood, and agreed to comply with the "FIMCO Industries **Substance Abuse Policy and Procedures**."  Docket No. 23-1 at p. 234.  While the court considers that named policy facially distinguishable from the more general "Employee Handbook," Mr. Wallace's admission as to signing the handbook controls for purposes of adjudicating this motion.  D.S.D. L.R. 56.1(D); See Tobey v. Extel/JWP, Inc., 985 F.2d 330, 333 (7th Cir. 1993) ("An admission trumps evidence, rather than vice versa.") (citations omitted).

Lawn & Garden department.  Id. ¶ 14.  Mr. Wallace believed that his promotion was due to Gardner's positive intervention on his behalf.  Id. ¶ 15.  Over the course of Mr. Wallace's employment with FIMCO, Mr. Wallace developed a mentee relationship with Gardner, who in turn mentored Mr. Wallace.  Id. ¶ 13.

FIMCO promoted Mr. Wallace again in 2015, this time to High Volume Assembly Lead, which involved a raise and additional responsibilities.  Id. ¶ 16.  In 2017, FIMCO again promoted Mr. Wallace to Senior Material Handler – Low Volume.  Id. ¶ 17.

In July 2017, Mr. Wallace was arrested, charged, and ultimately pled guilty to theft in the third degree.  Id. ¶ 20.  Mr. Wallace's conviction led to an absence that would have been grounds for termination under FIMCO's policies.  Id. ¶ 21.  FIMCO, at the behest of Gardner, provided Mr. Wallace an opportunity to retain his employment by taking a job as Material Handler – Heavy Assembly, which Mr. Wallace accepted.  Id. ¶ 22.

FIMCO promoted Mr. Wallace to be the Heavy Assembly Lead in June 2018.  Id. ¶ 23.  Gardner continued to work with Mr. Wallace on effective management strategies during Mr. Wallace's time as Heavy Assembly Lead.  Id. ¶ 24.

In October 2019, FIMCO promoted Mr. Wallace to the Supervisor position over Heavy Assembly.  Id. ¶ 25.  The decision to promote Mr. Wallace to the Heavy Assembly Supervisor was made by Gardner.  Id. ¶ 26.  Gardner promoted Mr. Wallace over two different white candidates.  Id. ¶ 27.

Mr. Wallace's promotion to Heavy Assembly Supervisor included additional responsibilities and a pay increase. Id. ¶ 28. Heavy Assembly is a particularly important division for FIMCO because it involves final assembly of FIMCO implements prior to shipment directly to vendors. Id. ¶ 29.

Gardner's opinion was that he observed strong development in Mr. Wallace's technical-side knowledge of the area but that Mr. Wallace needed to continue developing his leadership with respect to interpersonal conflicts and people management. Id. ¶ 30; Docket No. 29, ¶ 30. He believed Mr. Wallace struggled with interpersonal conflicts which Mr. Gardner observed as largely non-issues that Mr. Wallace took too much to heart. Docket No. 24, ¶ 31; Docket No. 29, ¶ 31.

**B.    Incident with Chad McComb and Subsequent Events**

On July 30, 2020, Mr. Wallace reported to work at shift start, when a FIMCO employee named Chad McComb approached Mr. Wallace and angrily accused Mr. Wallace of a relationship with McComb's girlfriend. Docket No. 24, ¶ 32. Mr. Wallace denied such a relationship and exchanged words with McComb for a few moments before McComb returned to his own work area, leaving Mr. Wallace. Id. ¶ 33.

Chad McComb was employed on FIMCO's Paint Line, a division which Mr. Wallace did not supervise. Id. ¶ 35. The Paint Line area is a distinct area from Mr. Wallace's Heavy Assembly workspace within FIMCO's main plant. Id. ¶ 36.

Not long after McComb left Mr. Wallace sitting at his desk in Heavy Assembly, Mr. Wallace chose to follow Mr. McComb, and walked to the Paint Line with a coffee cup in his hands. Id. ¶ 37. At the Paint Line, Mr. Wallace re-engaged McComb and the two engaged in another heated exchanged. Id. ¶ 39. Mr. Wallace and McComb came within arms' reach of one another, continuing to shout at one another. Id. ¶ 40. McComb used an open hand to smack Mr. Wallace's coffee cup out of his hand and onto the ground. Id. ¶ 41. By this point, other employees had intervened and physically separated McComb and Mr. Wallace. Id. ¶ 42.

Mr. Wallace reported to Gardner's office immediately after the incident. Id. ¶ 43. Gardner immediately investigated by speaking with McComb, who admitted to smacking Mr. Wallace's coffee cup. Gardner suspended McComb on the spot, sending him home. Id. ¶ 44. McComb was terminated later that day. Id. ¶ 45. McComb is a member of a protected class on the basis of his race (black). Id. ¶ 46.

After speaking with McComb, Gardner spoke with Mr. Wallace and suspended him for his involvement in the incident, pending further investigation. Id. ¶ 47. Gardner and David Meland, FIMCO's then-HR Specialist, continued to investigate that day and spoke to a number of witnesses. Id. ¶ 48. One witness reported that Mr. Wallace carried a box-cutter knife or other blade to the Paint Line when he approached McComb. Id. ¶ 49. Gardner communicated to Mr. Wallace the next day that Mr. Wallace

would remain suspended while all allegations were investigated.  Id. ¶ 50.  FIMCO ultimately determined the knife or blade allegation was entirely unfounded.  Id. ¶ 51.

FIMCO's investigation into the incident between Mr. Wallace and McComb led to three findings: (1) McComb was the primary aggressor in that he made first physical contact; (2) Mr. Wallace did not possess a weapon during the incident; and (3) Mr. Wallace had nonetheless exhibited conduct inconsistent with the expectations of a supervisor.  Id. ¶ 52.

Following the incident, Gardner and Meland offered Mr. Wallace a transfer to an open "independent contributor" role in Lawn and Garden as Shipping/Receiving Coordinator.  Id. ¶ 55.  Under this role, although no longer a supervisor, Mr. Wallace's wages, benefits, and opportunity for advancement remained the same as if he was still a supervisor.  Id. ¶ 56.

Not long after Mr. Wallace transferred to this new position, he requested time off from work, which FIMCO granted.  Id. ¶ 60.  FIMCO provided unpaid leave, largely without restriction, for a number of weeks through August and September 2020.  Id. ¶ 61.  FIMCO accommodated Mr. Wallace's absence because it reasonably understood Mr. Wallace's request could be characterized as a request for accommodation under law.  Id. ¶ 62.

Eventually Mr. Wallace returned to FIMCO, but frequently left work early.  Id. ¶ 63.  Work in Mr. Wallace's department was beginning to ramp up, and Gardner called Mr. Wallace to discuss ongoing expectations for

Mr. Wallace's employment, including when Mr. Wallace would be returning to work.  Id. ¶ 64.

In November 2020, Mr. Wallace texted Gardner asking for compensation equaling a year of his salary to "move forward," including finding another job.  Id. ¶ 65.  Because FIMCO had never previously offered any kind of compensation, settlement, or other payout to Mr. Wallace, it interpreted this text message as Mr. Wallace's resignation.  Id. ¶ 66.

**C.  Procedural Posture**

Mr. Wallace filed a charge of discrimination ("charge") with the South Dakota Department of Labor, Division of Human Rights on March 22, 2021.  Id. ¶ 68.  Mr. Wallace's charge alleged employment discrimination on the basis of race on three grounds:  "On August 3, 2020, I was disciplined and demoted from my position as a supervisor in Heavy Assembly and moved to Lawn and Garden as a material handler in [shipping] [;] On November 10, 2020 my employment was terminated[;] I was treated less favorably than other similarly situated employees who were not members of my protected group."  Id. ¶ 69.

FIMCO was provided notice of the charge and provided a comprehensive response through a position statement and exhibits.  Id. ¶ 75.  FIMCO was only provided a copy of the charge document, and not any of Mr. Wallace's supporting materials.  Id. ¶ 76.  FIMCO did not have notice of the allegations contained in Mr. Wallace's narrative account until the discovery process in this litigation.  Id. ¶ 77.  Mr. Wallace was provided a copy of FIMCO's position

statement and had the opportunity to rebut the allegations contained therein. Id. ¶ 78.

Mr. Wallace submitted to the state a supplemental narrative response to FIMCO's position statement on or about June 4, 2021. Id. ¶ 79. FIMCO did not receive notice of the allegations in this supplemental narrative response until the discovery process in this litigation. Id. ¶ 80. In Mr. Wallace's supplemental response, Mr. Wallace claimed that he needed time off in the fall of 2020 due to the "continued harassment from supervisors in the Lawn and Garden facility." Id. ¶ 81. Mr. Wallace subsequently testified under oath that the supervisors in Lawn and Garden never once made any statements regarding his race. Id. ¶ 82.

Mr. Wallace's supplemental narrative response included allegations that FIMCO had "resisted taking any actions against other employee[s] that had demonstrated aggressive behavior towards me." Id. ¶ 83. Mr. Wallace also alleged that FIMCO "has supervisors who have had many complaints of bad behavior" but has "taken no action against them. But [FIMCO] seemed eager to remove me from my position, even after their own investigation found no [wrongdoing] on my part." Id.

The South Dakota Department of Labor (SDDOL) issued its findings in the investigation on October 6, 2022, finding that there was not probable cause (as defined by SDCL § 20-13-1.1) that a violation of state or federal employment discrimination law had occurred, and dismissing Mr. Wallace's

charge.  Id. ¶ 85.  The SDDOL considered Mr. Wallace's theory of discriminatory demotion/discipline, and his separate claim for discriminatory discharge.  Id. ¶ 86.  The SDDOL did not consider or analyze any harassment allegations.  Id. ¶ 87.

The EEOC issued a "Determination and Notice of Rights" on December 14, 2022, adopting the SDDOL's findings, dismissing Mr. Wallace's charge, and issuing a right to sue notice.  Id. ¶ 88.  Mr. Wallace claims he received this determination on December 24, 2022.  Docket No. 1, ¶ 9; see Docket No. 29, ¶ 89; contra Docket No. 24, ¶ 89.  Mr. Wallace has provided no explanation for why the right to sue notice would have taken ten days to reach him by mail.  Docket No. 29, ¶ 93.  Mr. Wallace has not alleged any action by FIMCO prevented him from timely receiving the right to sue notice or prevented him from timely filing his complaint.  Id.

Mr. Wallace filed his complaint in the instant matter on March 22, 2023.  Docket No. 1.

## DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  It is, therefore, the moving party's burden "to establish both the absence of any genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."

S. Black Hills Water Sys., Inc. v. Town of Hermosa, 5:21-CV-05070-VLD, 2023 WL 4824956, at *4 (D.S.D. July 27, 2023) (emphasis added).  In considering a summary judgment motion, the court will "review the evidence and the inferences which reasonably may be drawn from the evidence in the light most favorable to the nonmoving party."  Musolf v. J.C. Penney Co., Inc. 773 F.3d 916, 918 (8th Cir. 2014) (citation omitted).

"Once the movant has met its burden, the nonmoving party may not simply rest on the allegations in the pleadings, but must present facts, by affidavit or other evidence, showing that a genuine issue of material fact exists."  Black Hills, 2023 WL 4824956, at *4 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); FED. R. CIV. P. 56(e)).  "The non-moving party must substantiate [his] allegations by sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy."  Musolf, 773 F.3d at 918 (citation and internal quotation marks omitted) (second alteration in original).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (*en banc*) (quoting Ricci v. DeStefano, 557 U.S. 557, 586 (2009)).

FIMCO moves for summary judgment on all counts, on three legal theories:  (1) Mr. Wallace's complaint must be dismissed because it was filed more than ninety days after he received the EEOC's "right to sue" notice;

(2) Mr. Wallace's charge identifies no violations within the applicable administrative deadline / many of Mr. Wallace's allegations are time-barred as a matter of law; and (3) even if timely, Mr. Wallace does not present a *prima facie* case of discrimination, and FIMCO has articulated a legitimate, nondiscriminatory basis for each decision affecting Mr. Wallace, which is not pretextual. Docket No. 23, ¶¶ 7–9. The court addresses only the first issue, which is dispositive.

**B.     Mr. Wallace's Ninety-Day Deadline**

Under statute, a person aggrieved of an unlawful employment practice may bring a Title VII civil action up to ninety days after the giving of their right-to-sue notice. 42 U.S.C. § 2000e-5(f)(1). The 90-day period begins to run "on the day the right to sue letter is received at the most recent address that a plaintiff has provided the EEOC." Hales v. Casey's Mktg. Co., 886 F.3d 730, 736 (8th Cir. 2018); see also 29 C.F.R. § 1614.407(a) (2020) (90 days begins to run upon receipt of the right-to-sue letter).

The EEOC mails the notice standard first-class—not certified, no signature required, no tracking number. Docket No. 23-1 at p. 231. The letter cautions the recipient to "keep a record of the date you received this notice" because the "right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days." Docket No. 1-1. "This ninety-day period constitutes a limitations period that bars a suit that is not filed within that time." Hales, 886 F.3d at 736.

11

Mr. Wallace's right-to-sue notice was dated December 14, 2022.  Docket No. 24, ¶ 88.  Mr. Wallace claimed in his complaint, at deposition, in a response to a request for admission, and in his affidavit and statement of material facts for the instant matter, that he received his right-to-sue notice on December 24, 2022.[4]  Docket No. 1, ¶ 9; Docket No. 23-1 at pp. 230–31, 282; Docket No. 31-1 at p. 4; Docket No. 30, ¶ 23.  His complaint was filed with this court on March 22, 2023, Docket No. 1, and so receipt on December 24, 2022, would make his complaint timely.

FIMCO argues that the court should presume an earlier receipt date—December 17, 2022, which would time-bar Mr. Wallace's federal claim.  Docket No. 25 at pp. 15–16.

In Baldwin County Welcome Center v. Brown, the Supreme Court presumed the receipt date of a right-to-sue notice to be three days after the issue date.  466 U.S. 147, 148 n.1 (1984) (per curiam) (citing Fed. R. Civ. P. 6(e)).  Rule 6 no longer has a subsection (e) as it did when Baldwin was decided.  The analogous provision in the current version of Rule 6 reads as follows:  "When a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail) . . . 3 days are added

---

[4] Mr. Wallace answered an interrogatory stating he received the notice on December 24, 2023.  Docket No. 23-1 at p. 279.  The court considers the stated year a typographical error.

after the period would otherwise expire under Rule 6(a)." See FED. R. CIV. P. 6(d).

Relying on Baldwin, the Eighth Circuit now applies an analogous, rebuttable presumption to calculate the date of receipt for a right-to-sue notice. Hales, 886 F.3d at 736. To rebut the presumption, a party must provide "sufficient probative evidence that would permit finding in [his] favor based on more than mere speculation [or] conjecture." Id. at 737 (citation omitted) (second alteration in original). A "conclusory, self-serving affidavit" does not suffice. See Mauller v. Heartland Auto. Servs., 4:17-CV-02219 JAR, 2019 WL 691658, at *4 (E.D. Mo. Feb. 19, 2019) (quoting Kieran v. Home Capital, Inc., 858 F.3d 1127, 1132 (8th Cir. 2017)); cf. Kieran, 858 F.3d at 1132 (8th Cir. 2017) (holding plaintiffs' conclusory, self-serving affidavits denying timely receipt of recission documents did not establish a genuine issue of material fact sufficient to defeat summary judgment and holding that plaintiff's claim for rescission was barred by the three-day window for seeking rescission). This is not to say that no affidavit or testimony can overcome the presumption, but either must be supported by "details or other evidence." Kieran, 858 F.3d at 1131–32.

This is where Mr. Wallace comes up short. He has testified several times that he received the notice on December 24, 2022. But he fails to provide any details or evidence to back that up. His letter cautioned him to keep a record of the date he received it; he did not do so. His affidavit submitted in opposition to FIMCO's summary judgment motion states he remembers

13

receiving it on December 24.  Docket No. 31-1, ¶ 17.  But his deposition testimony tells a different story.

When asked during his deposition for the basis of his December 24 assertion, Mr. Wallace testified "it could be a wrong date I put on there," "I don't know, honestly," "I don't know where I got the 24th from," "I can't remember how I came up with the 24th," and "I guess the best thing I could say is that maybe I got it wrong from 14 to 24."  Docket No. 23-1 at pp. 230–31.  These statements are the opposite of the confirmatory "details or other evidence" necessary to support self-serving testimony.  Keiran, 858 F.3d at 1132

Mr. Wallace argues in response to FIMCO's summary judgment motion that his differing testimony at differing times creates a classic question of fact (a question of credibility), which is for the jury to decide and which defeats summary judgment.  Docket No. 31 at pp. 5-7.  Generally, the question as to whether a party's claim is barred by a statute of limitations is a matter of law for the court to decide.  Emp'rs Reinsurance Co. v. Mass. Mut. Life Ins. Co., 654 F.3d 782, 791 (8th Cir. 2011).  However, "when contradictory or different conclusions may be drawn from the evidence" regarding the running of the limitations period, a fact question for the jury may arise.  Martin v. Holloran, 4:05-CV-1857 AGF, 2009 WL 10694599, at *2 (E.D. Mo. Mar. 24, 2009).

But, here, Mr. Wallace's own contradictory testimony cannot create the necessary factual dispute to save his case from summary judgment.  The

Eighth Circuit has held that, where "an affidavit filed by the plaintiff in opposition to a motion for summary judgment . . . directly contradict[s] the plaintiff's previous deposition testimony," that affidavit "is insufficient to create a genuine issue of material fact." City of St. Joseph v. Sw. Bell Tel., 439 F.3d 468, 475 (8th Cir. 2006) (citation omitted).

To reiterate, Mr. Wallace testified under oath at his deposition that he had no idea where he came up with December 24 as the date of receipt of his right-to-sue letter and that he guessed he may have gotten the date wrong. Docket No. 23-1 at pp. 230-31. His summary judgment affidavit merely makes the bald assertion that he remembers December 24 to be the correct date. Docket No. 31-1, ¶ 17. No attempt is made to explain his contrary deposition testimony or to explain why certitude has now alighted on him. Such bald disavowals of prior deposition testimony, without more, is unavailing. City of St. Joseph, 439 F.3d at 475. "The very purpose of summary judgment under Rule 56 is to prevent 'the interposition of specious denials.' " Id. (quoting Camfield Tiers, Inc. v. Michelin Tire Corp., 719 F.2d 1361, 1363 (8th Cir. 1983)).

The court finds it must apply the presumptive three-day receipt rule. Mr. Wallace's right-to-sue notice was issued on December 14, 2022, which would normally make December 17 the presumptive receipt date. But December 17, 2022 was a Saturday. Under Federal Rule of Civil Procedure 6(a)(1)(C), "any time period specified in these rules" should "continue[ ] to run

until the end of the next day that is not a Saturday[ ], Sunday[ ], [or] legal holiday." The court accordingly calculates Mr. Wallace's presumptive receipt date as Monday, December 19, 2022.

Mr. Wallace's complaint was filed on March 22, 2023, ninety-three days after the presumptive receipt date. Docket No. 1. The complaint as to count I—race discrimination in violation of Title VII of the Civil Rights Act of 1964, is untimely. 29 C.F.R. § 1614.407(a).

The court notes that Mr. Wallace makes no argument for equitable tolling. Docket No. 31 at pp. 5-7. The court cannot raise issues or assert defenses which a party himself has not raised. As to count I, then, the court concludes that FIMCO is entitled to judgment as a matter of law.

**C.    Mr. Wallace's State Law Claim**

What remains is Mr. Wallace's claim of race discrimination in violation of the South Dakota Human Relations Act, specifically § 20-13-10 of the South Dakota Codified Laws. Docket No. 1 at p. 8.

In the determination letter sent to Mr. Wallace by the South Dakota Division of Human Rights dismissing his charge, it laid out three options for next steps: (1) appeal the determination to a South Dakota Circuit Court within thirty days of the date of dismissal; (2) request EEOC review of the decision as it pertained to Title VII of the Civil Rights Act of 1964; or "[a]s an *alternative to the above options*," (3) contact the EEOC and request a Notice of Suit Rights. Docket No. 31-1 at p. 343 (emphasis added). If choosing the third

option, the letter cautioned, "You must file a lawsuit in federal or state court within 90 days of your receipt of the Notice of Suit Rights."  Id.

In relation to the first option, the court in Schmit v. Trimac Transportation, Inc., opined that federal courts lack jurisdiction to consider a claim under SDCL § 20-13-10 where the plaintiff did not appeal a determination in South Dakota Circuit Court within the prescribed thirty day period.  5:23-CV-05014-CBK, 2023 WL 3979023, at *4 (D.S.D. June 13, 2023).  The reason stated was that circuit courts in South Dakota lack jurisdiction in such a situation, and thus, under Erie,[5] federal courts are similarly situated.  Id. (citing Jansen v. Lemmon Fed. Credit Union, 562 N.W.2d 122, 124 (S.D. 1997)).  Following Schmit's logic, the proper course here would be dismissal for lack of subject matter jurisdiction of Mr. Wallace's state law claim.  Id.  Nothing in the record indicates Mr. Wallace filed an appeal in state court.

Mr. Wallace's determination letter, however, presented the third option *as an alternative* to the first option—allowing Mr. Wallace to bring suit in federal or state court within 90 days of receiving the right-to-sue notice.  Nothing about the letter stated that choosing the third option would vitiate Mr. Wallace's South Dakota claim.  Yet under that third option, Mr. Wallace lost the right to bring suit on the 91st day following receipt of the right-to-sue notice.  Assuming the option included state law claims, Mr. Wallace's delay results in the same grant of summary judgment as on the federal claim.  The

---

[5] Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938).

17

court is hesitant, however, to follow the letter's dictate as if it were law because the court cannot locate any South Dakota law or regulation providing authority for the letter's third option.

The court finds this ambiguity as to disposition presents "a novel or complex issue of State law." 28 U.S.C. § 1367(c)(1).  Because the only federal claim has been dismissed, the court finds it appropriate not to exercise supplemental jurisdiction over Mr. Wallace's state law claim.  Id. at (c)(3); Barstad v. Murray County, 420 F.3d 880, 882, 888 (2005).  Should Mr. Wallace wish to explore whether his state law claim remains viable, he must do so in the state courts of South Dakota.  Count II is dismissed without prejudice.  Mr. Wallace is advised he must refile his state law claim in a South Dakota court of competent jurisdiction within 30 days of today's date if he wishes to pursue that claim further.  28 U.S.C. § 1367(d).

*****

## CONCLUSION

Based on the foregoing facts, law, and analysis, it is hereby

ORDERED that FIMCO's motion for summary judgment (Docket No. 23) is granted in part and denied in part as follows:

(1) FIMCO's motion for summary judgment is GRANTED as to count I.

18

(2) FIMCO's motion for summary judgment is DENIED as to count II.

(3) Count II is dismissed, without prejudice.

(4) The action is dismissed.

DATED this 1st day of August, 2024.

BY THE COURT:

VERONICA L. DUFFY

United States Magistrate Judge